Next case, Giovanni v. Navy and Palmer v. Navy All right, Mr. Cooker. May I please the court, I'm Mark Cooker. I represent Mr. and Mrs. Giovanni and their two children of Warrington, PA. I'd like to reserve one minute for rebuttal. This case presents the question whether section 9613H of the Superfund Act should be construed to take away the claim that Giovanni's family has under Pennsylvania law for medical monitoring arising out of drinking contaminated water coming from the Willow Grove Naval Air Station. It should not. I think we're all on top of the briefs here. It's a very complicated case, so if you don't mind, I'd like to start with something that you say in your opening brief. You say you want simply to impose the cost of setting up a fund on the Navy. Correct. If that's true, if it's simply the cost, why isn't what you're asking for just the demand for compensatory damages? Why does it morph into an injunction because you choose to couch your request for money in the form of saying set up a fund? Because the Pennsylvania Supreme Court ruled on the Commonwealth Redlands soccer case that a claim under Hazardous Sites Cleanup Act for medical monitoring trust fund was a form of equitable and injunctive relief. So the label is what matters? Your Honor, I appreciate that, yes, the label is what matters. I think there's some case law going back and forth in some setting as to whether it's injunctive or not, but we're not asking for money into our pockets. We're asking for a court-supervised medical monitoring fund under the Hazardous Sites Cleanup Act, and I think the overwhelming weight of authority is that is an action for injunctive relief. Certainly this is not, in fairness, this issue was not briefed extensively in lower court or even in this court. But I was going to ask the same question, too. Your Honor, if I recall, your Honor hunted on that in a class action, whether it would be a B2 or a B3 class, ruling it was a complicated issue. I can't remember the name of the case, but I did read it recently. But I think that as the Pennsylvania Supreme Court has framed out the issue, this is a question of state law as to whether the relief is injunctive or not. Is it really just a matter of if the Pennsylvania Supreme Court says up is down or left is right, are we bound by that? Or are we supposed to be exercising some judgment here about what the plaintiff is actually asking for in this case? I think that the Pennsylvania Supreme Court has the final say of what is the remedy under the Pennsylvania Hazardous Sites Cleanup Act. They didn't talk about it. I have no question about that. Okay. My question is not meant in any way to impugn the Pennsylvania Supreme Court. It's just you seem to be saying, yeah, the labor matters, and that's a pretty unusual position in the law. Usually we look to the substance of what's going on. I couldn't agree more that substance should always predominate over form.  We're not asking to have money put in our pockets. This is not a case where Giovanni went out and got medical testing. No, but you are asking that money that would otherwise come out of their pockets not come out of their pockets. What you're making is make them put money and set it aside that we would otherwise have to put in and set aside. But it would be a court-supervised fund. The court would create a fund. The court would decide what is the proper medical monitoring protocol, what sort of blood testing is appropriate. Well, if that's true, then it's not just a question of telling the Navy to fund something, right? You're really saying you want, because the court's not going to do that. If that's what you're asking for, then you're asking the Navy to set up a medical monitoring, not fund, but a medical monitoring protocol, and that's a very different thing, isn't it? We're asking the court to decide what is an appropriate private medical monitoring program for these people and the Navy to then fund that. And a third party would administer it. A third party would administer it, yes. It could be administered under a court supervision. That's why the relief is essentially injunctive rather than damages. There was a case in, we're going to talk about these kinds of class actions, well-known class action arising out of the same type of contamination in West Virginia. Some of it's a class action. This is not a class action, but I'm simply using this as an illustration, where there was a court-supervised scientific panel that came down with findings of probable links to certain diseases, recommended a medical monitoring protocol, money paid into court, paid into a third party to administer the program. So that is injunctive relief. Hasn't there been a request for this relief to be extended to others? Yes. I think under HASCA we can ask for a program for others, not just for our named plaintiffs. Let's say it is an injunction. How can you shoehorn yourself into RCRA's waiver of sovereign immunity? Section 6961 looks like it's applicable to state agencies. It has a subsection at the end. It's about limitation on state use of funds. The whole subchapter is about state issues. And the citizen supervision is somewhere else. It's a later subchapter in 6972. So how is it that you can get past the government's sovereign immunity here? Well, what we are saying is that I don't think anything in the RCRA waiver limits this to claims by a state agency. It clearly waives sovereign immunity. Here's what it says. Hereby expresses any immunity with respect to any state substantive or procedural requirement, including but not limited to injunctive relief. But doesn't that leave out the whole list of things that they're talking about? The entire list is about administrative orders, civil or administrative penalties or fines, sentences, etc. None of these are private actions. These are all in the context of some sort of civil or criminal enforcement by a governmental agency, it appears. Can you point to anything in this waiver that says, and we mean for this to extend to private suits by private parties against the government? Okay. Well, first of all, any substantive or procedural requirement of state law, they start any, which is interesting because my adversary is the main issue of how broad the word any is. But it talks about if the government engages in the disposal or management of solid waste, it is then subject to all federal and state local requirements, substantive and procedural. I don't think anybody's questioning that piece of it. The question is whether private versus public. I think one of the state requirements in Pennsylvania, if you pollute, is you're liable under HASCA for medical monitoring. That is one of the state requirements. Judge Jordan's point was you read the rest of it and all these references to fines and penalties that look like things the state would bring. I made the point that subsection C is the kind of thing states would bring, and your point is just, well, there is this word injunction in there, and you seem to be reading it kind of apart from the rest of that list rather than, you know, a just in generis or noscator associates, we read them together. I'm sorry. There's another concern I have, which is to what extent do we consider that this amendment was added after Department of Energy versus Ohio, which was about the ability of Ohio to stand up and hold the government to its own limitations and requirements. Do you think that that's not valid because to the extent it's not spelled out in the statute, or do you read Department of Energy more broadly? Well, I mean, the only point of that is this amendment was clearly intended to broaden the waiver of immunity. What I simply want to say is this. It says if the federal government is engaged in the disposal of hazardous waste, it is subject to and shall comply with all federal, state, and local requirements, both substantive and procedural, respecting control and abatement of solid waste. And our view is that one of the Pennsylvania requirements is if you pollute and you leave people at increased risk of disease, then you are subject to a medical monitoring claim. That is a federal, excuse me, obviously not a federal, that is a state requirement as interpreted by the Pennsylvania Supreme Court. I wonder whether your argument here is in tension with your argument about whether this is a challenge. Because your argument there is that this is not a challenge because it's not about cleanup. And here the language of the waiver is in terms of control and abatement, and yet you want to say that you can shoehorn it here even though you can get around the challenge problem there. Why should we read them differently? Excellent question. Here's why. CERCLA does not provide a medical monitoring remedy. Medical monitoring does not fall within the scope of remedial or removal action. Pennsylvania HASCA does provide this remedy. So under Pennsylvania law, medical monitoring is a state requirement that falls within the scope of this waiver of immunity, even though it's not a CERCLA claim. But is it about control or abatement of hazardous waste? Yeah, in Pennsylvania it is, and under CERCLA it is not. In Pennsylvania it is, as construed by the Pennsylvania Supreme Court. CERCLA it is not, because I brought half the cases which tried to say medical monitoring wasn't CERCLA, at least possibly lost, and that's a dead issue. So it is, you know, Dombrowski v. Gould, you know, Toole v. Gould, Brewer v. Rabin, they were cases brought by my firm. So it is not full within the scope of hazardous waste control under CERCLA, because all the courts have said it is not a response clause. But HASCA is a broader statute. Pennsylvania Supreme Court construes it broadly and provides this as a state requirement. Then why don't you run into 9613H? Okay. Right? If you say it's not covered, it's a state law remedy, then why doesn't 9613H say, well, then sit down and wait? I'm sorry, Your Honor, could you just rephrase that again? Why don't you run into difficulty about timing requirements under 9613H? Because we're not challenging a CERCLA remedy. We're not challenging it. There has not even been a remedy selected for these chemicals yet at the site, and litigating medical monitoring would not have any effect on the selection of the remedy or a cleanup. The Paoli Railyard case. Judge Papert asked that same question, I think. Yeah, I know. And the answer is because there's zero facts in the record to show how this would interfere with a cleanup. In Paoli Railyard case, the second decision, I couldn't help but notice Judge Becker's portrait in his courtroom, the court specifically addressed subject matter jurisdiction in a state law medical monitoring claim at a Superfund site. And once the plaintiffs voluntarily dismissed their CERCLA claims, the only jurisdiction they found was pendent jurisdiction. We understand your position that implicitly it was dealt with, but it is, in fact, the case. It was never dealt with explicitly, right? It was in this court five times. Never dealt with explicitly. And never dealt with explicitly with some of the most brilliant minds that have ever sat here, clerks, advocates. No one saw this as an issue in five visits to this court. Right. Well, there's a lot to ask. And I do want to ask one more if my colleagues will indulge me. And I hope this is a relatively narrow question. Do you agree or disagree that the ATSDR provisions contemplate both medical monitoring and health effects studies both? The provisions empower the ATSDR to do that. The ATSDR has done nothing in that area for these chemicals at this site yet. Well, is there a dispute about or is there some assertion that they can do more, should do more? We are not asking to do more. We're not suing them. We're not suing the EPA. We are asking under Pennsylvania state law for a medical monitoring plan, which may or may not have the same criteria as an ATSDR medical monitoring plan, but which is preserved under, you know, it's not preempted. It's just not. Okay. All right. Thank you, Mr. Cooper. Please. Thank you. Good morning. May it please the Court, Stephen A. Strach for the Palmer appellants. Judge Jordan, you asked the question about 113H, and doesn't that bar this entire process? And one of the bases that we believe that the court below erred was by finding that, first, that there was a challenge, but secondly, that that challenge was therefore barred by 113H because this was a proceeding under Section 104. We respectfully submit that the court was wrong in applying that and concluding that this was under Section 120. It's clearly under 120. If it were clearly under 120, we wouldn't be fighting, right? Well. It can't be all that clear. Why wouldn't we look at this and understand that 104 actually provides – let me ask it this way. Is it your position that prior to amendments, that 104 didn't provide the authority that is in 120? I think they cover two different aspects. Yeah. Let me take another run at it. Okay. If 120 didn't exist, would 104 give the authority to do – Yes. Okay. So then what is it that 120 does to undermine the idea that this is authority granted by 104? Because this is a remedial action on an NPL site as opposed to a removal action or a site that is not on the national priorities list. Both the 7th Circuit and the 11th Circuit cases, especially OC that the court below relied upon, dealt with a site, a cleanup at a site that was not on the NPL. To the contrary, in the 9th Circuit case in Fort Ord, that was a case dealing with federal property and a site that was on the NPL, and that court stated that in its opinion, the grant of authority under Section 120 was what was involved. The interagency agreement in that case was created under 120. The interagency agreement that was in existence in this particular condition and setup was under 120. True. Fort Ord does say that. But in that opinion, does the court ever explain why 104 doesn't just as well provide the authority for the president to take response actions at NPL sites? I think that the court attempted to do that by dealing with whether it was a removal action as opposed to a remedial action and the differentiation between NPL sites and non-NPL sites. I think if you look at both Pollack and OC, they deal with the conditions that didn't exist in the Fort Ord case. I think we are consistent with Fort Ord. We believe that this court should follow the reasoning of the Fort Ord decision and not the two cases from the 7th and 11th because factually it's different, and the grant of authority Factually it's different, but we're dealing with the fundamental same legal issue, right? We've got a split. But not factual. Not a factual split. In other words, even in the OC decision, the court says that our review of 9613H for federal facilities, not listed on the NPL, complies with the view of the 7th Circuit. Right. So your argument rests on that. The difference is entirely NPL or non-NPL. Well, I think there has to be some basis for interpreting the different determinations by the circuits. And when the 7th Circuit says that it is following the reasoning of Pollack, I'm sorry, the 11th Circuit says it's following the reasoning of Pollack because it's a facility not listed on the NPL, and therefore it's distinguishable from the 9th Circuit decision in Fort Ord that that has to have some kind of relevance and some kind of meaning as we go forward in these cases in dealing with whether or not we should be barred, assuming you find that this is even a challenge. Okay. Thank you very much, Mr. Minister. Good morning. May it please the Court. My name is Jeff Bielert. I'm here on behalf of the United States Navy. I'm joined at Council's table by Jonathan McKay from the United States Navy. There's three reasons, independent reasons, why this court should affirm the dismissal of the complaints in this case. The first is that Section 9613H and A or B when read together deprive the district court of jurisdiction to review statewide challenges to ongoing remedial and removal actions taken by the government at surplus sites. Let me just ask you a question on that point. You took the position in the district court, and I assume you're still taking it, that even though this has been going on for a very long time, this could actually go on forever, decades and decades and decades. Congress meant to prevent private parties from being able to seek some kind of relief for their health needs for the community. That's basically the 113H assertion that Congress just said, you know what, we know this takes a long time, but too bad. A lot of people might get sick. A lot of people might die, but you don't get to even come to court. That's the Navy's position, right? Our position, Your Honor, is reflected what Congress wrote in its law, which is that, yes, 113H would not allow you to come into court, and that it does, in this court's own words, serve as a jurisdictional bar for those claims. But I want to touch on a few things here. There are ways for the Giovanni family and the Palmer family and all those who are quite frankly affected by the contamination under CERCLA. There are other provisions of CERCLA under 9604 that talks about the Agency for Toxic Substances and Disease Registry, ATSDR. Those provisions allow for health surveillance activities to occur, some medical monitoring things to occur. And it's true, and they don't want to do that. They want their rights under Pennsylvania law. They frame their complaint. They want their rights under Pennsylvania law. They say the government gave a broad waiver of sovereign immunity. They used the word any. They talked about it. So if the government chooses to waive sovereign immunity and chooses to say it's going to subject itself to state law remedies, why shouldn't they be entitled to limit the complaint they framed in the way they want to frame it? Well, a few things, Your Honor, and actually several things. I'll start with the sovereign immunity argument. As to Pennsylvania state law, and this is the O'Neill v. Army case, it looked at arguments made by plaintiffs suggesting that they were bringing this Pennsylvania Hazardous Sites Cleanup Act claims for medical monitoring. And what it said is if there is a waiver of sovereign immunity, that waiver of sovereign immunity is found in CERCLA. And so you look to the CERCLA's waiver of sovereign immunity. And so CERCLA's waiver of sovereign immunity, the government has said, yes, you can bring claims under state law, but not if the sites are listed on the national priorities list. And so the Congress chose to enact a statute that specifically says you can bring these claims, but not if they're on the NPL. In this case, there's no dispute. Both of these sites have been on the NPL, and Your Honor is absolutely correct. They've been on the NPL for a number of years. What doesn't make much sense to me, and I'm glad that Judge Peters brought this up, is what you have is under RCRA, it is a disposal of hazardous substances. It is not a cleanup act. That's what CERCLA is, so it's a disposal act. And under RCRA, it's talking about any state substantive law. All the cases that plaintiffs have cited in their reply briefs, talking about how this waiver of sovereign immunity under RCRA should somehow apply, all of those cases involved state laws that were disposal laws. They were not cleanup laws. It's very different. So here what we have is the Pennsylvania Hazardous Sites Cleanup Act was modeled after CERCLA, specifically. When it was drafted by Pennsylvania, it was modeled after CERCLA. It was meant to provide additional remedies that CERCLA doesn't provide. I get that. But RCRA is a very different statute. Yes, it's true. Is it all part of the same? Help me out here. CERCLA and RCRA, are they to be understood as forming an overall government approach to managing hazardous waste? Absolutely, Your Honor. There are many sites around this country where there are RCRA cleanups, CERCLA cleanups ongoing at the same time. Absolutely. And I understand that. But it strikes me as very odd. And this is the problem that I have. They bear the burden of showing that there's an unequivocal, applicable waiver of sovereign immunity. And the Supreme Court on down to this Court, many courts across this country have held that waivers of sovereign immunity are to be read narrowly. They're to be read in favor of sovereignty. And so I have argued in our brief and admittedly didn't really spell it out, but they have not carried that burden here. And I'm happy to walk through that. And you should, before you do, though, because that is important. Well, actually, go ahead and do that first. But then I want to make sure we get to the ASTDR question with you as well. Absolutely, Your Honor. Because there was a very light touch on sovereign immunity in your brief. Understandably, Your Honor, as to the RCRA waiver argument, because they didn't really spell it out. It wasn't raised in their opening brief. But the bottom line here is, Your Honor, even if you accept their argument that this is not a challenge. So you can reject my first argument. You can reject 96. Even if you accept that and you say, okay, what they really want is just this fund. They want the media to give money. RCRA's waiver of sovereign immunity does not go to monetary claims against the government. Neither does the surplus. So if what they now say before this Court, which you can read their complaints, and I encourage you to do so, what they are asking in their complaints is very different from just set up a fund. But putting that all aside, neither RCRA nor CERCLA's waiver of sovereign immunity would allow a private party to come into federal district court and get money damages against the government. What about this? 6961 clearly contemplates that states can bring these actions. Under the state law, the state could come in, patria, whatever, and seek an injunction. Injunctive relief is spelled out here. Ask for an injunction to set up a medical monitoring fund. So even if you win in this case, can't the Commonwealth come back and bring its action and set this up in a future case? Perhaps they could, Your Honor. And I'm sure that we would have arguments as to why they don't belong in district court as well. But here it's private parties. And so I think context matters. And it matters in the cases that they're relying on. It matters in the context of this particular waiver. And there's nothing, and I think Your Honor brought this up earlier, is there's nothing in either one of these provisions that suggests that private parties get to sue the government for monetary damages or to set up a trust fund for medical monitoring. They are right that there is a reference to injunctive relief. And 6961A does not spell out that this is just states bringing these actions. You know, there is language in there that gives them a toehold for this. It's very broad language. I agree, Your Honor. But it is not an unequivocal waiver of sovereign immunity that's applicable to the claims that they're bringing in this case. And if I may, I'll turn to the statutory argument. No, I – Oh, sorry. Are you saying that these kinds of private suits have not been allowed anywhere in the country? I am unaware of a case that was brought under a hazardous cleanup act similar to Pennsylvania's that was modeled under CERCLA where a court said you can look to RCRA, a separate waiver of sovereign immunity, and not CERCLA's waiver of sovereign immunity, which the Pennsylvania state courts have held. So Pennsylvania in its own state courts have held that if you're going to get sovereign immunity to bring a Pennsylvania hazardous sites cleanup act claim against the federal government, it belongs under CERCLA's waiver of sovereign immunity. So that's the O'Neill case. I am unaware of any case that said you can come in as a private party and use a RCRA waiver of sovereign immunity to challenge ongoing removal and remedial actions that the government is taking under CERCLA. So I'm unaware of a case. I don't know that they've cited one. The cases they cite all involve state disposal laws and very different circumstances from what's at issue here in these cases. Not to cut you off on this, but Judge Jordan did want to take you to this 9613H issue. Yes. And I think your brief conceded, you know, the D.C. Circuit's approach about whether this would interfere with an ongoing removal or response action. And your brief finds some other cases that are more vaguely worded. But let's assume the D.C. Circuit's formulation is right. How is setting up this monitoring going to interfere with an ongoing response action? I don't see it. Right. So, Your Honor, and this is what I was getting to with the ATSDR. So the ATSDR provisions of CERCLA specifically allow for the federal government to go in and look at what's going on on the ground, assess this, and then set up this health surveillance. And so what you have is, and there's plenty of cases in other circuits where it suggests that under 9613H, it's not just that it interferes with. It's an even, and this court said it in the Clinton County, well-intentioned. It wants to improve upon. You cannot dictate specific actions to the federal government. That's the ARCO case in the Ninth Circuit. Well, but let's focus in on removal or remedial. Right. What I find difficult about your argument is I don't see how this fits in with removal or remedial actions. When I look at 9601, 24 has a long list of things that include, but they're not limited to, but then we have to read it together, this list. Storage, confinement. This is at the location of the release. Perimeter, protection using dikes, trenches, ditches, clay cover, neutralization, recycling, reuse, diversion, destruction, reactive waste, dredging, excavation, repair or replacement, leaking, runoff, leachate, and then any monitoring reasonably required to assure that such actions protect the public health. You've got to read the monitoring at the end in light of all of these very site-specific, hands-on, get-your-fingers-dirty kinds of clean-up actions. I don't see how you can divorce the word monitoring there from everything that came before and say that this is a remedial action. Right. So, Your Honor, there's both removal and remedial actions, and I think that we read their complaint to suggest that they are, and the district court read their complaint to say that they are challenging both ongoing remedial and removal actions. Isn't medical monitoring, though, under Daigle and under Price not a removal or remedial action? Well, so those cases are talking about, like, response costs and how you interpret, so I'm not sure. Yeah, but they say, do they not, that medical monitoring is not a remedial or a removal action. So I think that those cases concern private parties, medical monitoring, the Durfee, so this is the Downwinders case that explains why that's not applicable. They're not remedial and removal actions when it's a private party. They're remedial and removal actions when it's a government agency, and this is what Downwinders explains. This is walking through this. Right. I'm with you on that. I understand that. What I'm trying to get at is if these are, well, let me put it to you this way. The district court made this distinction between response and response costs. Yes, sir. And that seemed to be in an effort to distinguish Daigle and to distinguish Price, right? Yeah. I wonder how the government supports that. Do you agree that that is an actual distinction that can be defended? It doesn't appear in our brief, Your Honor. I think that we rest on the arguments that we advance in our brief, and the way that we framed it was slightly different from the way the Ninth Circuit and some of those lower courts have framed it and, quite frankly, the way the district court framed it. But our view is that when you look at these provisions, both the definition of removal and remedial action, you look at what's going on on the ground here at these sites. You have three agencies of the federal government, the Navy, the EPA, the ATSDR, all taking actions as of right now. The ATSR recently completed a study in cooperation with state agencies. It's doing a health assessment? We did a study of cancer rates, cancer incidence rates. We cite it in our brief. There's a number of websites that are available to track what's going on on the ground. But back to the statute. Yes. You are not disputing the cost of response requires that there be a response. The statute says response equals removal plus remedial. When I asked you about remedy, you didn't press that this is part of the remedy. You said it's part of the removal. But the removal likewise couches this in terms of monitoring the release or threat of release, the disposal. These are all site-specific actions that are being listed, like security fencing. Both of these provisions are what's happening at the site in terms of the cleanup, which the word remove itself implies. This is about taking gunk out of the ground. So I don't see how this can be a response or a response cost of the sort that would be barred under 9613H if it doesn't fit within 9601, 23, or 24. Well, my point is it uses very broad language. It talks about monitor, assess, evaluate contamination. Any action taken to prevent, minimize, mitigate. These are all harms to public health. I mean, those are words that are used in the definition of removal action. So our point is, and I think the district court got this absolutely right when it looked at these definitions and said, okay, I'm going to look at these definitions. I'm going to pull out the complaints. I'm going to look at the relief that they're asking for. And what I see here is that they are raising challenges. They are raising challenges to ongoing actions taken by federal government agencies at these two sites in Pennsylvania. And our view is the district court got that exactly right. And it's consistent with language found in a number of opinions from not only this court, sitting on bunk, but also several sister circuits that have looked at what a definition of a challenge is and in what context you would be challenging an action that would be barred by 9613H. And they use exceptionally broad language. And it's something that calls into question, changes the nature of a cleanup. You can't dictate specific actions. I mean, that's what they're trying to do. They're coming in and trying to... Is it a medical monitoring request that's going to dictate and change actions? It's telling the Navy, I mean, just look at their complaint, Your Honor. I mean, they say specifically... Assume we accepted their position now. They say, we just want the money in a fund. That's all we want. The Navy doesn't have to do anything. Right. Assume that that's the case. I understand your position that that's not what they said in their complaint. But take the hypothetical, right? Yes, Your Honor. Okay. If that's the case, then how is it in any way affecting the EPA, the TSDR, the Navy, and whatever they're doing to say put some money in a fund so there can be monitoring for these people? If you accept that argument and you conclude that it is not a challenge and putting this money aside has nothing to do with subsection H and I lose on that, I don't lose on sovereign immunity, Your Honor. The waiver of sovereign immunity under CERCLA and under RCLA does not cover, does not allow them to come into court and get money from the government to set up this fund. Understood. Would you please respond to Mr. Engstrich's argument that this is really not covered by 9604 at all? Right. It's covered by 9620. So, Your Honor, the Fort Ward decision, we point this out in our brief, it was not disputed. The parties didn't dispute this 9620 argument. Fort Ward, the Ninth Circuit itself says seems to provide for alternative grounds of authority. Fort Ward has not been followed on this. They admit that, that there's a split. The 7th and the 11th have rejected that argument. 9604 specifically talks about authority that the President has. And when you look at it, and we point this out in our brief as well, there are ongoing removal and remedial actions at these sites. And so it doesn't get the Palmers very far to say, and even if you buy their argument and accept the fact that remedial is only 9620, there are ongoing removal actions at these sites. And so even if you take it that 9604 doesn't apply, it does apply to removal actions. And that's simply, they're still going on. The Navy continues to provide bottled water to a number of residents in this area, and it continues to take steps to ensure that the public water that is available now to residents, it does not have any perfluorinated compounds in it. So I don't see how they're able to prevail on the argument, Your Honor. All right. I ask that the Court affirm the dismissals in these cases. All right. Thank you, Mr. Buehler. Thank you, Your Honor. I appreciate your argument, Mr. Cooker. I just want to make three points. We pleaded the Miracle Waiver in Paragraph 6 of our complaint. We're not just raising it now. It was pleaded up front. I didn't take them to be saying, and maybe I misheard it, that you didn't make an argument. I understood the main point on that to be twofold. One, this is a statute rooted in CERCLA. Pennsylvania courts have said it's rooted in CERCLA, and if that's the case, the CERCLA waiver is the one you've got to deal with, not the RICRA waiver. Well, okay, so two things. O'Neill did not discuss the RICRA waiver at all for whatever reason. I don't know why, but only discussed the CERCLA waiver. Maybe it's because only the CERCLA waiver was pleaded in that case. Secondly, deal with the logic. Hit the logic. The logic they're asserting is the Pennsylvania statute is based on CERCLA, and Pennsylvania courts have said you look to CERCLA. So if you're going to look to CERCLA, you've got to look to the immunity waiver provision, too. You can't go off to RICRA and find your waiver. Well, I don't think O'Neill says that explicitly, but I just want to point out there's two cases we cited, page 15 of our reply brief, which are private cost recovery actions brought under state, let's call them mini CERCLA laws, one in Rhode Island and one in Washington, where the courts held that the RICRA waiver applied and allowed the action to go forward against the federal government in a private cost recovery action. So those cases explicitly looked at the RICRA waiver and said it applied. O'Neill just doesn't. It just doesn't. Again, I don't know why. It just doesn't, whether it wasn't pleaded. If it's not pleaded, they can't address it. You can only plead the waiver of sovereign immunity that's pleaded. And there are other cases we cite. Candidly, I didn't get a chance to look at them again to see if they involve private parties or not. But there's certainly the language of the RICRA waiver is broad enough to encompass a private party claim as being a claim to enforce a state requirement. And as one of your honors said, clearly the Commonwealth of Pennsylvania could bring this claim against the federal government as parents patrie. It could, but that's not the case we've got to deal with, right? Understood. Understood. Okay. Thank you very much. We appreciate counsel's argument in this complicated case. We'll take the matter under advisement and recess.